Nathan M. Smith (SBN 255212)
**BROWN NERI SMITH & KHAN LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Phone: 310-593-9890
Fax: 310-593-9980
Email: nate@bnsklaw.com
[Additional Counsel Appear on Signature Page]

*Attorneys for Djakarta Jacobs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DJAKARTA JACOBS, an individual;<br><br>Plaintiff,<br><br>v.<br><br>PNY TECHNOLOGIES, INC.,<br><br>Defendant. | Case No.: 2:21-cv-4190<br><br>**<u>CLASS ACTION</u>**<br><br>CLASS ACTION COMPLAINT<br><br>FOR:<br><br>1. Breach of Express Warranty<br>2. Unjust Enrichment<br>3. Violations of California's False Advertising Law<br>4. Violations of California's Unfair and Deceptive Acts and Practices in Violation of the Consumers Legal Remedies Act<br>5. Violations of California's Unfair Competition Law<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

**NATURE OF CASE**

1. Defendant PNY Technologies, Inc. ("PNY") manufactures and sells chargers for portable electronic devices ("PEDs"). The packaging of PNY's chargers (commonly referred to as "power banks") misrepresent the milliampere-hours or mAh provided by their power banks. In fact, the mAh PNY's power banks deliver is significantly lower than represented to consumers. The consumers that buy those power banks are harmed by receiving products inferior to what they believe they are buying.

2. Consumers, as a result of the modern lifestyle, are increasingly dependent on smart phones, tablets and laptop computers and other PEDs. PEDs give consumers immediate access to information and instant communication with colleagues, friends, and loved ones.

3. Like any electronic device, PEDs require power. Consumers must periodically recharge their PEDs, which may be difficult if no outlet is available.

4. To solve that problem, technology companies like PNY market and sell power banks.

5. Power banks are small, portable power sources that connect to, and charge, consumers' PEDs. Power banks can be charged at home and then taken on the go.

6. A power bank's ability to recharge PEDs can be measured in mAh. A power bank with a higher mAh has an enhanced ability to recharge PEDs, as compared with a power bank with a lower mAh, in short, a power bank with a higher mAh has more "juice."

7. A label that represents that a power bank has a certain mAh conveys to reasonable consumers that the power bank is capable of delivering that amount of mAh to charge PEDs.

8.      Power banks are not fashion items or status symbols. Consumers do not buy power banks for intangible factors such as the products' looks, styling, or other soft features. Power banks are not serviced or repaired once sold. There is no significant relationship between the consumer and the company after purchase. The main point of buying a power bank is to have the ability to get more power.

9.      Accordingly, consumers prefer and are willing to pay more for power banks with a higher mAh.

10.     Technology companies are aware of this. One such company is PNY. PNY markets and sells a variety of models of power banks hereafter referred to as the Products ("Products").

11.     PNY's models are all materially the same, and they are advertised and packaged in materially the same manner with respect to mAh. Such models include, but are not limited to: the Power Pack Power Delivery 20000, PowerPack Slim 20000, PowerPack T10400, Power Pack Power Delivery 10000, PowerPack Slim 10000, PNY AD7800, PowerPack BD5200, PowerPack Slim 5000, 4400, PowerPack 2600, PNY 2250, PowerPack T2200, PowerPack CC1800, and PowerPack M1500.

12.     PNY is a key player in the power bank market. The market generates more than $15 billion in sales each year for the industry as a whole.

13.     For profit and a higher market share, PNY exploits consumers' preferences for power banks with higher mAh.

14.     PNY intentionally deceives consumers by misrepresenting the amount of power its Products can transfer to PEDs.

15.     PNY advertises its Products as delivering more mAh than its Products are able to provide.

16.     Plaintiff Djakarta Jacobs and other consumers have relied on PNY's misrepresentations when they bought one of PNY's Products.

17.    Ms. Jacobs purchased the PowerPack 2600 mAh model.

18.    PNY advertises the PowerPack 2600 mAh model as having 2600 mAh.

19.    However, the PowerPack 2600 mAh model is not capable of delivering 2600 mAh to a consumer's PEDs.

20.    As a result, Ms. Jacobs was economically injured when she paid a premium for one of PNY's Products that did not work as represented and warranted.

21.    Ms. Jacobs brings this proposed class action, individually and on behalf of a class of similarly situated consumers, against PNY. Ms. Jacobs seeks redress for PNY's unlawful, unjust, unfair, and deceptive practices in misrepresenting the mAh the Products can deliver and violating state law during the applicable statute of limitations period.

## PARTIES

22.    Plaintiff Djakarta Jacobs is a citizen of Sherman Oaks, California.

23.    Defendant PNY Technologies, Inc. is a New Jersey corporation with its principal place of business at 100 Jefferson Rd., Parsippany, New Jersey.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because: (a) the number of members of all proposed plaintiff classes in the aggregate is greater than 100; (b) a member of a class of plaintiffs is a citizen of a State different from Defendant; and (c) the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs.

25.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

COMPLAINT

3

# DETAILED ALLEGATIONS

### A) PNY is a Global Technology Company that Markets its Products by Emphasizing their mAh Values.

26.     Established in 1985, PNY is a global technology company with twenty locations throughout North America, Latin America, Europe, and Asia.

27.      PNY's product partners include HP, Lego, NVIDIA, and Polaroid.

28.     PNY proudly boasts it has over 30 years of business experience serving customers.[1]

29.     PNY is a major manufacturer of battery chargers and as such occupies a leading position in its field.

30.     PNY manufactures, markets, and distributes for sale nationwide to consumers a number of models of power banks.

31.     The packaging of PNY's power banks include representations regarding their mAh capacities.

32.     These representations regarding mAh capacities are prominently displayed on the packaging.

33.     These representations regarding their mAh capacities include the actual names of the products.

34.     However, those representations are false.

35.     Testing has shown the amount of mAh the Products actually deliver is substantially lower than what is represented on their packaging.

36.     These misrepresentations by PNY are intentional.

37.     By deceiving consumers about the Products' mAh, PNY is able to sell more of, and charge more for, the Products than it could if they were labeled accurately.

---

[1] PNY *Our Story*, http://www.pny.com/company/about-pny/our-story (last visited June 7, 2019).

38.     Further, PNY is incentivized to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

39.     Accordingly, Ms. Jacobs and class members are injured based on the difference in the value of the Products if they were actually capable of delivering the promised mAh versus the value based on the actual lesser mAh they deliver. Consumers are willing to pay more for the Products based on their belief that they are capable of delivering the promised mAh than they would pay if the Products were truthfully advertised and labelled.

40.     All of the Products are marketed, sold, and advertised in a substantially similar manner, and there is no non-trivial difference amongst all PNY Products other than the differences in purported mAh.

41.     All PNY Products deliver electricity to PEDs in the same or substantially similar manner.

42.     PNY draws attention to its Products' mAh by placing the mAh rating right in the name of the Products, and by prominently displaying the mAh rating on advertising materials and the product package.

43.     Furthermore, PNY promises and warrants, on the Products themselves, that the Products can deliver a specific amount of power, as measured in mAh.

**B) PNY's Products Cannot Deliver the Full mAh Amount to PEDs as Advertised.**

44.     PNY knew at the time it sold the Products that the Products were not capable of delivering the mAh represented on the Products.

45.     The Products consist of an internal battery cell (or series of batteries cells) and a circuit board that controls the technology. The Products' circuit boards convert the internal batteries' charge to a voltage that PEDs can accept.

46.     The Products then send the voltage to the PEDs to increase the PEDs' battery power.

47.     To convert and distribute the power from the Products to the PEDs, the Products take power from their own internal batteries.

48.     Running the internal circuit board and converting power for charging PEDs is a process that uses as much as 30-40% of the internal cells' power.

49.     This conversion and distribution process necessarily reduces the amount of mAh actually delivered into a PED.

50.     Reasonable consumers such as Ms. Jacobs would read the advertised mAh and expect and understand that the Products would actually *deliver* that amount of mAh.

51.     Because of the process described above, PNY knows the Products are technologically incapable of delivering the amount of mAh PNY claims in advertising for the Product and on the Products.

52.     Ms. Jacobs hired an experienced and reputable outside laboratory to perform tests on PNY batteries. Specifically, the PowerPack 5200 and the 1800 mAh products.[2]

53.     These tests were done in accordance with recognized engineering standards.

54.     The lab test results show that 100% of the PNY Products tested do not measure up to PNY's claims. The outside lab found that PNY's Products consistently failed to provide the mAh PNY advertised. Test results for the four units that were tested by the lab are below.

---

[2] Ms. Jacobs did not test her own specific battery as to avoid charges that she has spoiled the evidence. Once the parties agree on an appropriate test protocol, Ms. Jacobs is willing to test her specific battery.

| Capacity Represented (in mAh) | Actual Capacity (in mAh) |
|---|---|
| 5200 | 3399 |
| 5200 | 3522 |
| 1800 | 1041 |
| 1800 | 1005 |

55.     These outside lab results confirm that PNY Products consistently fail to provide power equal in the amount of mAh that PNY advertises and which reasonable consumers rely upon.

**C) PNY Deceived and Made False Representations to Ms. Jacobs and all other Consumers about the Products' mAh.**

56.     In or around the middle of 2018, Ms. Jacobs saw, in California, and relied on PNY's mAh representations about the PNY PowerPack 2600 mAh model.

57.     On PNY's package, PNY said that the PowerPack 2600 mAh model had "2600 mAh."

58.     Ms. Jacobs purchased the PowerPack 2600 mAh model.

59.     Ms. Jacobs relied upon PNY's misrepresentations.

60.     Ms. Jacobs believed that the product she purchased would actually deliver 2600 mAh for her to use to charge her PEDs.

61.     After purchasing the PowerPack 2600 mAh model, Ms. Jacobs was disappointed to find she was forced to recharge the PowerPack 2600 mAh model more often than she expected.

62.     Ms. Jacobs is a typical and reasonable consumer who expects that a product will meet the specifications as advertised.

63.     Ms. Jacobs, like every similarly situated consumer, has been economically injured as a result of PNY's actions.

64.     Ms. Jacobs regularly uses PEDs and would purchase PNY's Products in the future if she could trust the representations on the Products regarding mAh.

65.     However, it is impossible to determine from looking at the Products whether the stated representations are accurate.

66.     Ms. Jacobs cannot rely on those representations without some kind of assurance that they are accurate, such as an Order of this Court.

67.     On June 7, 2019, Ms. Jacobs's counsel sent PNY a letter informing them of the harm caused by PNY's deceptive acts in accordance with the Consumers Legal Remedies Act.

68.     PNY has not remedied the situation for Ms. Jacobs or the class that Ms. Jacobs represents.

## CLASS ALLEGATIONS

69.     Ms. Jacobs brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and similarly situated individuals within California (hereinafter the "Class"), defined as follows:

> All consumers who purchased PNY power banks in California.

> Excluded from the Class are any of PNY's officers, directors, or employees; officers, directors, or employees of any entity in which PNY currently has or has had a controlling interest; and PNY's legal representatives, heirs, successors, and assigns.

70.     Ms. Jacobs reserves the right to amend or modify the Class definition.

71.     The Class is ascertainable because the Class Members can be identified as a class by objective criteria – the purchase of PNY Power Banks

during the Class Period.  Notice can readily be provided to Class Members through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

72.    At this time, Ms. Jacobs does not know the exact number of members of the Class; however, based on PNY's sales, market research, and publicly available information Ms. Jacobs believes that the number of members of each of the Class are so numerous that joinder of all members is impractical. PNY is a major player in the power bank market.

73.    Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    a.  Whether the Products deliver the power, as measured in mAh, that PNY claims;

    b.  Whether PNY misrepresented the Products' mAh ratings;

    c.  Whether PNY's conduct was unfair and/or deceptive;

    d.  Whether PNY has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for PNY to retain the benefits conferred upon PNY by Ms. Jacobs and the Class;

    e.  Whether PNY's conduct constitutes a breach of express warranty;

    f.  Whether PNY violated state consumer protection laws;

    g.  Whether Ms. Jacobs and the Class have sustained damages and, if so, the proper measure thereof;

    h.  Whether Ms. Jacobs and the Class are entitled to restitution, and if so, the proper measure thereof; and

    i.  Whether PNY should be enjoined from continuing to sell the Products as currently labeled.

74.    Ms. Jacobs's claims are typical of those of the Class. Like all members of the Class, Ms. Jacobs purchased a PNY Product bearing the claim that the Product's mAh is greater than it really is. And like all Class Members,

Ms. Jacobs sustained damages from PNY's wrongful conduct. There is nothing unusual or distinct about Ms. Jacob's claims compared with others who meet the class definition.

75.    Ms. Jacobs will fairly and adequately protect the interests of the Class, and has retained counsel experienced in complex consumer products class actions. Ms. Jacobs has no interests which conflict with those of the Class.

76.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

77.    No member of the Class has a substantial interest in individually prosecuting a separate action. The damages for each individual member of the Class likely will be relatively small compared with the costs of this complex litigation. Thus, absent a class mechanism, it would be virtually impossible for class members to obtain an effective remedy.

78.    The prerequisites to maintaining a class action for injunctive or equitable relief are met, as PNY has acted or refused to act on grounds generally applicable to the members of the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

79.    PNY's conduct is generally applicable to the Class as a whole and Ms. Jacobs seeks, *inter alia*, equitable remedies with respect to the Class. As such, PNY's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## FIRST CLAIM FOR RELIEF
### (Breach of Express Warranty)

80.    Ms. Jacobs incorporates by reference and re-alleges herein all paragraphs alleged above.

81.    PNY's representations regarding the Products' mAh constitute affirmations of fact or promise.

82.   Those affirmations of fact or promise relate to the goods and becomes part of the basis of the bargain that creates an express warranty that the goods shall conform to the affirmation or promise.

83.   PNY's representations that the Products' mAh are greater than they really are relates to the goods and became part of the basis of the bargain between PNY and purchasers of the Products.

84.   PNY's representations—made in writing on the face of the packaging as to a material term of the transaction and on the Products themselves—constitute an express warranty.

85.   Ms. Jacobs and members of the Class purchased the Products, believing that they conformed to the express warranties pertaining to the Products' mAh.

86.   PNY breached its express warranties about the Products because the Products' actual mAh was lower than PNY represented.

87.   As a result of PNY's breaches of express warranty, Ms. Jacobs and the other members of the Class were damaged in the amount of the purchase price they paid for the Products, or the difference between the value of the Products accepted by Ms. Jacobs and the putative class members and the value of the Products if they had the actual warranted mAh.

88.   Among other things, Ms. Jacobs and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above.

89.   Moreover, had Ms. Jacobs and the members of the Class known the true facts, they either would not have purchased the Products, or would not have been willing to pay the price PNY charged for the Products.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

90.     Ms. Jacobs incorporates by reference and re-alleges herein all paragraphs alleged above.

91.     Ms. Jacobs and the members of the Class conferred benefits on PNY by purchasing the Products and paying a greater price for them than they would have if PNY had truthfully represented the Products' mAh.

92.     PNY has knowledge of such benefits.

93.     PNY's representations that the mAh of the Products is greater than it actually is constitutes an affirmation of fact that is part of the basis of the bargain between PNY and purchasers of the Products.

94.     PNY made its representations to induce Ms. Jacobs and the members of the Class to purchase, purchase more of, or to pay more for the Products than they otherwise would have, and Ms. Jacobs and the members of the Class relied on the representations in purchasing the Products.

95.     PNY was enriched at the expense of Ms. Jacobs and the other members of the Class, thereby creating a quasi-contractual obligation on PNY to restore those ill-gotten gains to Ms. Jacobs and the members of the Class.

96.     Under the circumstances, it would be against equity and good conscience to permit PNY to retain the ill-gotten benefits it has received from Ms. Jacobs and the other members of the Class, in light of the fact that the Products were not what PNY purported them to be.

97.     PNY must make restitution.

98.     Ms. Jacobs and the Class are entitled to recover damages and other appropriate relief.

## THIRD CLAIM FOR RELIEF

### (Violations of California's False Advertising Law)

99.   Ms. Jacobs incorporates by reference and realleges herein all paragraphs alleged above.

100.   As alleged more fully above, PNY has falsely advertised the Products by falsely claiming that the Products mAh is greater than it really is.

101.   At all material times, PNY engaged in a scheme of offering and advertising the Products for sale within the State of California to the public by, inter alia, commercial marketing and advertising, the Internet, the Products' packaging and labeling, and other promotional materials and also offered for sale and advertised the Products in California.

102.   The misrepresentations and non-disclosures by PNY of the material facts detailed above constitute false and misleading advertising, and therefore constitute a violation of the False Advertising Law ("FAL") Cal. Bus. & Prof. Code § 17500, *et seq*.

103.   Said advertisements and inducements were made within and from the State of California and come within the definition of advertising contained in the FAL. The promotional materials were intended as inducements to purchase the Products and are statements disseminated by PNY to Ms. Jacobs and the other Class members that were intended to reach Ms. Jacobs and the other Class members. PNY knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive.

104.   The above acts of PNY did and were likely to deceive reasonable consumers, including Ms. Jacobs and the other members of the Class, by misrepresenting the amount of mAh the Products can deliver, in violation of the "false" and "misleading" prongs of the FAL.

---

**COMPLAINT**

105. Ms. Jacobs and the other members of the Class have suffered injury in fact and have lost money or property as a result of PNY's violation of Cal. Bus. & Prof. Code § 17500 *et seq*.

106. Pursuant to California Business and Professions Code §§ 17203 and 17535, Ms. Jacobs and the other members of the Class seek an order of this Court that includes, but is not limited to, an order requiring PNY to remove and/or refrain from making representations on the Products' packaging and in its advertising that the Products deliver more mAh than they really can.

**FOURTH CLAIM FOR RELIEF**
**(Violations of California's Unfair and Deceptive Acts and Practices in Violation of the Consumers Legal Remedies Act)**

107. Ms. Jacobs incorporates by reference and re-alleges herein all paragraphs alleged above.

108. This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§1750-1785 (the "CLRA").

109. Ms. Jacobs and the other members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

110. Ms. Jacobs, the other members of the Class, and PNY have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

111. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, as described above, and the conduct was undertaken by PNY in transactions intended to result in, and which did result in, the sale of goods to consumers.

112. As alleged more fully above, PNY has violated the CLRA by falsely representing to Ms. Jacobs and the other members of the Class that the

Products are technologically capable of delivering the amount of mAh PNY claims.

113.   As a result of engaging in such conduct, PNY has violated:

a.   California Civil Code § 1770(a)(5) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

b.   California Civil Code § 1770(a)(7) by representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

c.   California Civil Code § 1770(a)(9) by advertising goods or services with intent not to sell them as advertised.

d.   California Civil Code § 1770(a)(16) by representing that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

114.   PNY's actions were willful and oppressive.

115.   Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Ms. Jacobs seeks an order of this Court that includes, but is not limited to, an order requiring PNY to remove and/or refrain from making the representations referenced above.

116.   Ms. Jacobs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

117.   The unfair and deceptive acts and practices of PNY, as described above, present a serious threat to Ms. Jacobs and the Class.

118.   CLRA § 1782 NOTICE. On June 7, 2019, Counsel for Ms. Jacobs sent a demand letter to PNY. In the Demand Letter, Ms. Jacobs provided notice of PNY's violation of the CLRA and demanded that within thirty (30) days, PNY correct, repair, replace, or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letter also stated that if

PNY refused to do so, a complaint seeking damages would be filed. PNY has failed to voluntarily remedy their violations. Ms. Jacobs, on behalf of herself and all other members of the Class, seeks an award of equitable relief and attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### (Violations of California's Unfair Competition Law)

119. Ms. Jacobs incorporates by reference and realleges herein all paragraphs alleged above.

120. By committing the acts and practices alleged herein, PNY has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

121. PNY has violated the UCL's proscription against engaging in *unlawful* conduct as a result of :

   a. Its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), and (a)(16) as alleged above; and

   b. Its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq*., as alleged above

122. PNY's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

123. As more fully described above, PNY's false and misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers. Indeed, Ms. Jacobs and the members of the Class were unquestionably deceived regarding the amount of mAh the Products delivered, as PNY's marketing, advertising, packaging, and labeling of the Products misrepresent and/or omit the true facts concerning the benefits of the Products. Said acts are fraudulent business practices.

124. PNY's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

125. Ms. Jacobs and the Class suffered a substantial injury by virtue of buying the Products that they would not have purchased absent PNY's unlawful, fraudulent, and unfair marketing, advertising, and packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

126. There is no benefit to consumers or competition from the deceptive marketing and labeling of the Products, which PNY misrepresents as having mAh greater than it really is.

127. Ms. Jacobs and the Class had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

128. The gravity of the consequences of PNY's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Ms. Jacobs and the other members of the Class.

129. PNY's violations of the UCL continue to this day.

130. As a result, Ms. Jacobs and the Class are entitled to compensatory and statutory damages and attorney's fees and costs, as well as injunctive relief pursuant to Business and Professions Code § 17203.

## PRAYER FOR RELIEF

Ms. Jacobs demands judgment on behalf of herself and the Class as follows:

a. An order certifying the proposed Class; appointing Ms. Jacobs as the representative of the Class; and appointing Ms. Jacobs's undersigned counsel as Class counsel for the Class;

b. A declaration that PNY is financially responsible for notifying members of the Class of the pendency of this suit;

c. An Order requiring proper, complete, and accurate labeling of the Products;

d. Monetary damages, injunctive relief, restitution, and statutory damages in the maximum amount provided by law;

e. Punitive damages in accordance with proof in an amount consistent with applicable precedent;

f. An Order awarding Ms. Jacobs and the other members of the Class the reasonable costs and expenses of suit, including their attorneys' fees;

g. Disgorgement of all profits and/or restitution to Ms. Jacobs and the Class of all funds acquired by means of any act or practice declared by this Court to be unlawful or fraudulent or constituting unfair competition under Bus. & Prof. Code §§17200, *et seq*., or untrue or misleading advertising under Bus. & Prof. Code §17500, or in violation of Cal. Civ. Code §1770; and

h. Any further relief that the Court may deems appropriate.

## DEMAND FOR JURY TRIAL

Ms. Jacobs hereby demands a trial by jury.

Dated:  May 19, 2021

**BROWN NERI SMITH & KHAN LLP**

By: *Nathan M. Smith*
Nathan M. Smith
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Phone: 310-593-9890
Fax: 310-593-9980
Email: nate@bnsklaw.com

**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR, MOUGEY, P.A.**

William F. Cash III (*pro hac vice motion forthcoming*)
Matthew D. Schultz (*pro hac vice motion forthcoming*)
Brenton J. Goodman (*pro hac vice motion forthcoming*)
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7140
Fax: 850-435-7020
Email: bcash@levinlaw.com
Email: mschultz@levinlaw.com
Email: bgoodman@levinlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

D. Greg Blankinship (*pro hac vice motion forthcoming*)
Bradley Silverman (*pro hac vice motion forthcoming*)
1 North Broadway, Suite 900
White Plains, NY 10601
Phone: 914-298-3290
Fax: 914-908-6708
Email: gblankinship@fbfglaw.com
Email: bsilverman@fbfglaw.com

*Attorneys for Djakarta Jacobs*